CITED *in Mount* v. *Cubberly*, 4 *Harr*. 126.

---

## SMITH v. THE TRENTON DELAWARE FALLS COMPANY.

*Certiorari* to the Secretary of State

This court will set aside the appointment and proceedings of appraisers of the value of, and damage to lands taken by a company for its use, by virtue of a statute, if they exceed the authority given thereby.

The report of *two* appraisers under such appointment, is void if it do not shew that the *third* was present and sworn, or his absence accounted for.

An *appointment* of such appraisers, to value lands, &c. in *one* county, does not authorize their valuation in *two* counties: altho' an agreement under seal of the land owner binds him to accept the sum appraised for his land in the second named county, by men *mutually chosen* by the parties. If they mutually choose the appraisers who were appointed under the statute, their awards should be distinct and separate, not embraced within one, which is general in its terms and combines all the valuation and damages in one sum —and that too in a case where the lands taken by the company, lying in one county, are to be used for one purpose, and that in the other, for another purpose.

*W. Halsted,* for plaintiff.
*S. R. Hamilton,* for defendants.

The case is fully stated in the opinion of the court delivered, by

HORNBLOWER, CH. J. This is a *Certiorari* directed to the Secretary of State, to bring up the appointment, and proceedings of Commissioners, under the act, entitled "an act to incorporate a

company to create a water power at the city of Trenton and its vicinity, and for other purposes," passed 16th February, 1831.

On the 5th day of March, 1834, the company served on Smith, a notice, that they would cause a *survey* and *map* to be made of certain lands belonging to him, situate along and near the bank or margin of the river Delaware, *in the township of Trenton*, which would be useful and requisite for the construction of LA-TERAL *raceways*, and intended by the said company, to be appropriated to that purpose : and that such *survey* and *map*, would be exhibited to the Hon. T. C. Ryerson, one of the justices of this court, at a certain time and place therein mentioned; at which time and place, application would be made to the said justice, for the appointment of commissioners, agreeably to the provisions of the said act, to make an appraisement of the value of *said lands*, and damages.

On the day, and at the place appointed in the said notice, the company exhibited to the said Justice Ryerson, a petition, in which after reciting the act of incorporation so far as relates to this subject, and after stating therein, " that the said Company could not agree with the said Smith, *for and in relation to such and so much* of certain lands belonging to him, *in the township of TRENTON*, as would be useful and necessary for the construction of LATERAL race-ways, and intended to be used by the company for *that purpose ;* and that they had caused *a survey* and *map*, to be made of the *said lands* and of the quantity thereof, *so* intended to be used ;" they prayed the said Justice to appoint commissioners to estimate and appraise the *value* of the *said land*, and damages ; at the same time, the company exhibited to the said Justice, three distinct maps of as many different pieces of land, two of which, are described as lying in the township of *Trenton*, in the county of *Hunterdon*, and required for *lateral* race-ways, and the other as situated in the township of *Nottingham*, in the County of *Burlington*, and required for a *main* race-way. These maps were directed by Justice Ryerson, by an endorsement made upon them, to be filed in the Secretary's office, and he thereupon by writing under his hand, appointed William Cruser, John Gulick and Peter Kline, appraisers, to estimate and appraise the value of such and so much of certain lands belonging to P. F. Smith, situated in the Township of

*Trenton,* in the county of *Hunterdon,*" as were requisite for constructing *lateral* race-ways, &c."

On the 4th of April, 1834, a writing signed by all three of the appraisers, was served on Smith, giving him notice that they had been appointed to appraise, *such and so much of his land,* lying in the *Township of Trenton,* in the county of HUNTERDON, as was requisite for the construction of *lateral race-ways,* &c., and that they would meet at, &c., on the 22d of that month, at 10 A. M. to make a valuation and appraisement of *said lands,* &c.

On the 22d of April, William Cruser and John Gulick, two of the appraisers, met at the appointed place, and after several adjournments, made an appraisement, under their hands and seals, of the land, claimed by Peter T. Smith, situated in the *Township* of NORTHAMPTON, in the County of BURLINGTON, and also *two other* lots or parcels of land in the Township of TRENTON; in the County of HUNTERDON, alleged to be requisite, &c. "*for the said lateral race-way.*"

Upon the face of these proceedings, the following errors, or, at least objections, are apparent :

I. Upon a notice to the plaintiff, by the company, that they would exhibit *a map* or *survey of* certain lands in Trenton, requisite for *lateral race-ways,*—and apply for appraisers to value the same, they actually exhibited before the Justice, 3 several maps and surveys, for as many different pieces of land ; *one* lying in *Nottingham,* to be used for a *main race-way ;* and 2 lying in *Trenton,* wanted for *lateral race-ways.*

II. The Justice appointed appraisers to estimate the value, &c. of certain lands of the plaintiff, in *Certiorari,* lying in the Township of *Trenton,* in the County of Hunterdon, requisite for the construction of *lateral* race-ways, without designating the lands to be thus appraised and used, either by a reference to the map representing the same, or in any other way : so it does not appear by the appointment, nor can it be ascertained by this record, which of the two lots of land in *Trenton,* were to be so appraised and used, or whether the lands described in both of the maps and surveys, in that Township, were to be appraised, and used by the company for the construction *of lateral* race ways—and yet by the terms of the charter, upon payment or tender by the Com-

pany, of the sum awarded, the plaintiff is to be divested of his freehold, and the title to pass from him to the Company.

III. The appraisers have erred in several particulars : 1st. They have palpably exceeded their authority, in appraising lands lying in *Nottingham*, and to be used for a *main* race-way ; when they were specifically appointed to appraise lands lying in *Trenton* which were to be used, for *lateral* race-ways.   2dly. They have given no description or specification, either by quantity or by metes and bounds, or by reference to the maps, of the lands valued and appraised by them, so that it can never appear or be ascertained, *by the record*, what lands, on payment of the sum awarded, are to pass from the plaintiff to the company.   3dly. They have not designated in their report, at how much they valued the different parcels of lands, nor distinguished between the *value* of the lands, and the *damages*, but have awarded one general sum for the lands and damages.   4thly. The valuation and appraisement appear, *upon the record*, to have been made by *two only* of the appraisers, without in any way accounting for the absence of the other—and without shewing that the other appraiser was sworn, or that he was present, acting or consulting with them.   The *State* v. *Coleman*, 1 *Green's R.* 98.

The charter, (*Harr. comp :* 355.) requires that " the appraisers, *or a majority of them*, shall make a just and equitable appraisement, &c :"   But this does not dispense with the necessity of all three of the appraisers' attending, taking the oath required, and acting in the premises ; or at least, not unless one of them should be dead or refuse to act : and without expressing any opinion, what the law would be in such case, it is sufficient to say, that such does not appear to have been the fact in this case.

On the part of the defendants in *Certiorari*, no attempt has been made to sustain the legality of these proceedings, as they appear *on the record ;* but they say that Kline the other commissioner was present and took part in the view and appraisement, but refused to sign the award, because he did not concur with his associates in the sum awarded ; and that he was so present, acting in the premises, is proved by the affidavits of William Cruser and John Gulick, the other appraisers.   But they do not prove, nor is it in any way shewn, that Kline was sworn as an

appraiser in the matter; so that, even if such proof would obviate the objection, the defendants have failed to establish the fact. For this reason therefore, if for no other, namely, that it appears *by the record*, that only two of the appraisers were sworn and acted in the premises, the appraisement must be set aside.

Again, the defendants attempt to justify the *two* commissioners in appraising the lands in *Burlington county*, wanted for the *main race way*, although they were not appointed by Justice Ryerson to make any such appraisement, upon the ground that Smith had agreed with the Company, to convey to them, *that* land for such sum as should be fixed upon by appraisers to be *mutually agreed upon between them;* and that when the appraisers appointed by Justice Ryerson, were on the ground, Smith consented to their appraising the land in *Burlington,* as well as the land in *Hunterdon.*

In support of this allegation, they shew a covenant executed by Smith, the twenty-fourth of January 1832, binding him to convey the land in *Burlington,* for such sum as should be fixed by appraisers, to be mutually chosen between them; and they produce also the depositions of Cruser and Gulick, two of the appraisers, who testify that they appraised the land and damages in *Burlington* county, as well as those in Hunterdon, by the agreement of the parties, and with the consent of Smith the plaintiff in *Certiorari.*

If upon this writ, we could settle this controversy, we should find it difficult to do so, since by the affidavit of John C. Schenck, examined on the part of the plaintiff, and who states that he was at the time of the appraisement, the largest stockholder and a director in the company. They prove that *Smith* objected to their appraising his lands in *Burlington;* denied their right to do so, and told them they were exceeding their authority.

But be this as it may, the plain answer to all this is, that the appraisers should have made *two distinct* awards : one for the lands in *Hunterdon,* wanted for *lateral* raceways, *under the appointment of Justice Ryerson;* and another, (if such was the fact) as appraisers *mutually chosen* between the parties, as to the lands in *Burlington,* wanted by the Company for a *main* raceway. Instead of which, they have made *one entire award* as appraisers appointed *under the statute,* by Justice Ryerson, and have therefore clearly exceeded their authority.

A tender to Smith, or payment to him of the sum awarded, may divest him of, and vest *in* the Company, the title to the land in *Hunterdon,* but not the land in *Burlington.* The one is to pass by operation of law, the other by agreement of parties.

The proceedings in Chancery, to which we are referred by the counsel for defendants, can have no possible influence on the legal objections apparent on the face of this record. It seems that Smith, the plaintiff in *Certiorari,* in 1834, exhibited his bill in Chancery for, and obtained, an injunction, restraining the defendants from entering upon his lands, &c. To this bill, the defendants prepared, but never filed an answer. But the injunction was afterwards dissolved, and the bill dismissed under an agreement between the parties, that the defendants should pay the complainant's costs, and deposit the sum awarded by the appraisers, in Bank, to the credit of complainant, with liberty to him " to accept thereof or not, at his pleasure." The costs were paid and the money deposited, but the complainant hath not thought proper to accept of it; on the contrary by coming into this court, and seeking to set aside the proceedings at law, he has manifested his election not to abide the appraisement that has been made. By consenting to have his bill dismissed, he may be barred from going again into Chancery for an injunction, but he is not precluded from setting aside the appraisement, on *Certiorari,* for errors apparent on the record.

In my opinion, the appointment of the appraisers and the award, report and proceedings of the two appraisers must be set aside, reversed and for nothing holden.

*Appointment and proceedings of the appraisers reversed and set aside.*